The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of C.T.S. and S.S., Children,

and Concerning B.S. and S.P., Respondents–Appellants.

No. 06CA0072.

Colorado Court of Appeals, Div. III.

June 1, 2006.

Frank J. Hutfless, County Attorney, David M. Serafin, Assistant County Attorney, Golden, Colorado, for Petitioner–Appellee.

David R. Gloss, Denver, Colorado, for Respondent–Appellant B.S.

Terry Ross, Denver, Colorado, for Respondent–Appellant S.P.

GRAHAM, J.

S.P. (mother) and B.S. (father) appeal from a judgment terminating the parent-child legal relationship between them and their children, C.T.S. and S.S. We affirm.

### I.

■ Mother contends that the evidence was insufficient to support the trial court's findings that she did not reasonably comply with the treatment plan, that the plan was not successful, and that she was unfit. She argues that she substantially complied with the treatment plan and that the plan did not require that she end her relationship with father. We reject mother's contentions.

To terminate the parent-child legal relationship pursuant to § 19–3–604(1)(c), C.R.S. 2005, clear and convincing evidence must establish, among other things, that an appropriate treatment plan, approved by the court, has not been complied with by the parent or that the plan has not been successful in rehabilitating the parent and that the parent is unfit. Section 19–3–604(1)(c)(I)–(II), C.R.S.2005; *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

The parent is responsible for assuring compliance with and success of the treatment plan. *People in Interest of A.H.,* 736 P.2d 425 (Colo.App.1987). Although absolute compliance is not required, partial compliance, or even substantial compliance, may not result in success of the plan by correcting or improving the parent's conduct or condition or by rendering the parent fit. *People in Interest of T.E.M.,* 124 P.3d 905 (Colo. App.2005); *People in Interest of D.L.C.,* 70 P.3d 584 (Colo.App.2003).

In cases concerning a child under the age of six, reasonable compliance with or success of the treatment plan cannot be found when

> [t]he parent exhibits the same problems addressed in the treatment plan without adequate improvement, including but not limited to improvement in the relationship with the child, and is unable or unwilling to provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions.

Section 19–3–604(1)(c)(I)(B), C.R.S.2005; *C.S. v. People in Interest of I.S.,* 83 P.3d 627 (Colo.2004).

An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. Section 19–3–604(2), C.R.S.2005. Among the factors to be considered in determining unfitness are the parent's history of violent behavior and neglect of the child. Section 19–3–604(2)(c), (f), C.R.S.2005.

■ The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

The children here were taken into custody by the department of human services following a domestic violence incident that resulted in the arrest of mother and father. Besides concerns about domestic violence, there were concerns about the condition of the home and father's substance abuse. To address these concerns, mother's treatment plan required that she (1) participate in a domestic violence evaluation and comply with any recommendations; (2) attend parenting classes; (3) visit the children regularly; (4) maintain a safe, stable home and employment; (5) refrain from criminal activity; and (6) cooperate with the department of human services.

Evidence adduced during the termination hearing revealed that mother substantially complied with the treatment plan, maintaining housing and employment, visiting the children regularly, and completing parenting classes and domestic violence treatment. However, after the motion to terminate was filed, mother missed numerous visits. She also failed to attend several of the children's medical appointments, which was concerning because of the children's fragile medical conditions.

The caseworkers testified that the parents' ongoing relationship was problematic because father had not addressed his substance abuse and domestic violence problems; that they had frequently addressed this concern with the parents; that they had advised mother that the children were more likely to be returned to her if she separated from father; and that the children could not be safely returned to the parents as a couple. Although the parents reported that father had moved to Oklahoma shortly before the termination hearing, the caseworker was unable to contact him at the telephone numbers provided, and he and mother were seen leaving together after the first day of the termination hearing. Because of prior false reports of having separated and the parents' express desire to work their treatment plans together, the caseworkers doubted whether father had actually moved.

Based on this evidence, the trial court made the following findings:

Despite the fact [that mother has] been able to maintain some employment ... and has been able to complete the domestic violence program, the Court finds that she has not successfully complied with the terms of the court-ordered treatment plan. She missed numerous visitations after [the motion to terminate was filed], and most importantly she was not able to provide a safe environment for these children to return home because of her continued involvement with [father].

The trial court further found that the parents' history of domestic violence, together with mother's inability to separate from father, prevented mother from keeping the children safe and rendered her unfit.

We agree with the trial court's determinations. Although the treatment plan did not require mother to end her relationship with father, mother was aware of the caseworkers' safety concerns about her violent relationship with him, and the treatment plan required that she participate in domestic violence treatment to address these concerns. However, after completing treatment, mother chose to remain in a relationship with father. Thus, mother's conduct prevented her from providing protection adequate to meet the children's needs and rendered her unfit. *See* § 19–3–604(2).

Under circumstances such as these, where a parent chooses to remain in a relationship with a person who poses a threat to the welfare of the child, the conduct of that parent may prevent him or her from providing protection adequate to meet the child's needs. Accordingly, that parent may be found unfit under § 19–3–604(2). That the person who poses a threat happens to be the other parent does not alter this analysis.

Having support in the record and comporting with applicable law, the trial court's findings that mother did not successfully comply

with the treatment plan and that she was unfit will not be disturbed on review. *See People in Interest of C.A.K., supra.*

## II.

■ Father contends that the trial court erred in finding that the department made reasonable efforts to rehabilitate him. He argues that the department unduly delayed implementation of the treatment plan and that he should be given more time in which to comply with the plan. We disagree.

Generally, the state must make reasonable efforts to prevent out-of-home placement of abused or neglected children and to reunite the family. *People in Interest of J.M.,* 74 P.3d 475 (Colo.App.2003); *see* § 19–3–604(2)(h), C.R.S.2005. "Reasonable efforts" means the exercise of diligence and care for children who are placed out of the home. The child's health and safety are the paramount concerns in determining the extent of such reasonable efforts. Section 19–1–103(89), C.R.S.2005; *People in Interest of D.R.W.,* 91 P.3d 453 (Colo.App.2004).

The reasonable efforts standard is deemed met if services are provided in accordance with § 19–3–208, C.R.S.2005. Section 19–1–103(89). Among the efforts required of the department are an assessment of the family, development of a case plan for the provision of services, and provision of information and referral services regarding available public and private assistance resources. Section 19–3–208(2)(b), C.R.S.2005. If funding is available, the department must also provide diagnostic and mental health services and drug and alcohol treatment services. Section 19–3–208(2)(d)(IV)–(V), C.R.S.2005. The parent, however, is responsible for assuring compliance with and success of the services provided. *See People in Interest of A.H., supra.*

The record here reveals that the treatment plan, which was approved in August 2004, required father to participate in a mental health evaluation. Pursuant to the recommendation of the evaluation, the treatment plan was amended in November 2004 to require a full psychological evaluation. The department did not make a referral until at least eight weeks after the plan was amended, and father did not complete the psychological evaluation until May 2005. Based upon the record, the trial court's finding that the department's delay was not unreasonable has support and is not erroneous.

The psychologist who conducted the evaluation testified that father needed to maintain sobriety for at least one year in order to support a definitive diagnosis. However, the evaluation indicated that father suffered from dysthymia and had an antisocial personality disorder with narcissistic and schizotypal features, which was unlikely to change.

The record further reveals that the department provided substance abuse treatment and scheduled a medical evaluation for father, but that he did not successfully complete the treatment or attend the evaluation. Father did not request additional or more comprehensive services. While a higher level of care for an extended period of time may have better addressed his needs, the children, who were under the age of six and had been in lengthy out-of home placements, needed a permanent home as soon as possible. *See* § 19–3–703, C.R.S.2005 (providing that a child who is under the age of six at the time the petition in dependency or neglect is filed must be in a permanent home no later than twelve months after his or her original out-of-home placement).

Thus, the record supports the trial court's finding that the department's delay in making a referral for father's psychological evaluation was not unreasonable. Therefore, it will not be disturbed on review. *See People in Interest of C.A.K., supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge FURMAN concur.