The PEOPLE of the State of Colorado,
Petitioner–Appellee,

In the Interest of J.O., a Child,

and

Concerning K.M.O., a/k/a K.M.C.,
Respondent–Appellant.

No. 07CA0643.

Colorado Court of Appeals,
Div. V.

Sept. 20, 2007.

Frank J. Hutfless, County Attorney, Ingrid H. Holmes, Deputy County Attorney, Ellen G. Wakeman, Deputy County Attorney, Golden, Colorado, for Petitioner–Appellee.

Gina G. Bischofs, Wheat Ridge, Colorado, for Respondent–Appellant.

Opinion by Judge DAILEY.

K.M.O. (mother) appeals from the judgment terminating the parent-child legal relationship between her and her son, J.O. (child). She asserts that the notice requirements of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901 to 1963 (2001), were not met. We vacate the judgment and remand with directions.

On August 4, 2006, a petition in dependency and neglect was filed asserting that the child had been left with his daycare providers (special respondents); he previously was abused by S.F.I. (father) and suffered torn neck muscles; and mother suffered from ongoing mental health problems and did not follow through with the child's care.

At the temporary custody hearing on August 4, 2006, father claimed to be one-quarter Apache, although not registered with a tribe. The trial court advised him of the need to verify his alleged Indian heritage within two weeks so that a determination could be made whether the protections of the ICWA were available. The order stated that parents were given an assessment form to be completed and returned to the caseworker prior to the next hearing, and that the tribe(s) would be provided notice if, and when, sufficient information was provided.

Father stipulated to the adjudication granting temporary protective custody of the child to the Jefferson County Division of Children, Youth and Families and placement with special respondents. Mother was afforded the right to a full evidentiary hearing,

but a default adjudication ultimately was entered on August 10, 2006. In September 2006, temporary legal custody was transferred to special respondents, and the county continued to exercise protective supervision over the child.

An ICWA notice was sent by certified mail to the Bureau of Indian Affairs (BIA) in Washington, D.C., on December 4, 2006, indicating that the parents "may be members of an Indian tribe" and that "[n]o further information has been provided," listing only the child's birthdate, and indicating the tribe's right to intervene. The record does not confirm that the petition was attached to the notice.

Two days later, the motion to terminate was filed. It recited that, although the parents had indicated that the child might be a member of an Indian tribe or eligible for enrollment, the child did not meet the definition of an Indian child because the parents did not return the assessment form or provide additional information regarding his Indian status, and "[t]he court's determination that the [ICWA] is inapplicable has not been contradicted."

The record contains a return receipt, showing that the BIA received the notice by certified mail on January 30, 2007. The trial court register of actions also shows that a letter, which is not contained in the record, was thereafter received from the BIA indicating that "in[ ]sufficient information has been provided to identify the minor[']s tribal affiliation or to determine eligibility for enrollment with a federally recognized [ ] tribe."

Notice of the March 9, 2007, termination hearing was sent to the BIA by regular mail on March 2, 2007.

Mother did not attend the termination hearing, but her counsel, who had previously been allowed to withdraw, notified the court that mother knew of the hearing date. Father appeared and, after extensive questioning to confirm that he understood his rights, confessed the motion to terminate. The People represented to the court that because notice of the hearing was sent to the BIA, the tribe did not respond, and father was not a registered member of a tribe, the court could determine that the ICWA did not apply.

In the termination order, the trial court found that father indicated he had some Native American heritage, a notice was sent to the BIA, but the agency did not respond, and father provided no information regarding his membership in a tribe or about any of his relatives who might be enrolled in a tribe. The court therefore concluded that the child was not an Indian child subject to the ICWA.

On appeal, mother argues that (1) the notice provided to the BIA was tardy because it was not sent until several months after the petition was filed; (2) the notice was deficient, and tantamount to no notice at all, because it did not specifically mention the Apache tribe and incorrectly stated that "no further information has been provided," even though father had asserted he was one-quarter Apache; and (3) identification of the relevant tribe was almost impossible, especially if the parents were not enrolled or registered, because the notice did not contain the requisite identifying information. She also argues that the statutory duty of further inquiry was not fulfilled.

## I. Standing

■ Initially, we reject the People's argument that mother lacks standing to challenge compliance with the notice requirements of the ICWA because she failed to comply with the treatment plan and, having failed to assert error in her treatment plan, is not an aggrieved party.

Under the ICWA, as relevant here, "parent" means "any biological parent ... of an Indian child." 25 U.S.C. § 1903(9) (2001). Furthermore, under 25 U.S.C. § 1914 (2001), "any parent or Indian custodian from whose custody such child was removed ... may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of [the ICWA]."

Notice is a key component of the congressional goal to protect and preserve Native American families. *In re Welfare of M.S.S.*, 86 Wash.App. 127, 134, 936 P.2d 36, 40

(1997). Thus, a non-Indian biological parent has standing to argue that the notice requirements of the ICWA have not been complied with. *See In Interest of H.D.*, 11 Kan.App.2d 531, 532, 729 P.2d 1234, 1236 (1986); *In re Welfare of M.S.S.*, 86 Wash.App. at 133, 936 P.2d at 39.

Here, there is no question that mother is the child's biological parent. Thus, mother has standing under § 1914 to petition to invalidate the order terminating the parent-child legal relationship with her son, notwithstanding the fact that the child was not in her physical care. *See Morrow v. Winslow*, 94 F.3d 1386, 1394 (10th Cir.1996); *In re Adoption of Child of Indian Heritage*, 111 N.J. 155, 181, 543 A.2d 925, 937–38 (1988) ("custody" in § 1914 refers to a parent's legal, rather than physical, relationship with a child); *see also D.J. v. P.C.*, 36 P.3d 663, 670 (Alaska 2001) ("continued custody" under 25 U.S.C. § 1912(f) (2001) refers to legal custody as well as physical custody).

Indian tribes have a separate interest in Indian children, distinct from, but equivalent to, parental interests. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52, 109 S.Ct. 1597, 1610, 104 L.Ed.2d 29 (1989); *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 301 (Colo.2006). Tribal membership is not defined by the ICWA, and each tribe has the authority to determine its membership criteria and to decide who meets such criteria. *People in Interest of J.A.S.*, 160 P.3d 257, 260 (Colo.App.2007).

Thus, the notice requirements of the ICWA serve the interests of the Indian tribes and, therefore, cannot be waived by a parent and may be raised for the first time on appeal. *In re Justin S.*, 150 Cal.App.4th 1426, 1435, 59 Cal.Rptr.3d 376, 383 (2007).

## II. Notice Under the ICWA

The ICWA establishes minimum federal standards for the removal of "Indian children" from their families and the placement of such children in foster or adoptive homes that reflect the unique values of Indian culture. 25 U.S.C. § 1902 (2001); *B.H. v. People in Interest of X.H.*, 138 P.3d at 302; *People in Interest of A.E.V.*, 782 P.2d 858, 859–60 (Colo.App.1989).

An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (2001); *see People in Interest of P.A.M.*, 961 P.2d 588, 589 (Colo.App.1998); *see also* § 19–1–103(65.7), C.R.S.2006 (defining "Indian tribe").

Sufficiently reliable information of any criteria upon which membership might be based is adequate to trigger the notice provisions of the ICWA. These criteria may include such considerations as enrollment, blood quantum, lineage, or residence on a reservation. *B.H. v. People in Interest of X.H.*, 138 P.3d at 304.

Under 25 U.S.C. § 1912(a) (2001) and § 19–1–126(1)(a)–(b), C.R.S.2006, if the state knows, or has reason to know or believe, that an Indian child is involved, it must provide notice to the Indian child's tribe by registered mail, with return receipt requested, of the pending proceedings and of the tribe's right to intervene. If the identity or location of the tribe cannot be determined, such notice shall be given to the BIA. *B.H. v. People in Interest of X.H.*, 138 P.3d at 302. Notice must be received at least ten days before the hearing in involuntary proceedings in which a party seeks to place a child in foster care or to terminate parental rights. 25 U.S.C. § 1912(a); *People in Interest of S.R.M.*, 153 P.3d 438, 442 (Colo.App.2006).

Because the Indian tribes have a separate interest in Indian children, distinct from but equivalent to parental interests, they must have a meaningful opportunity to participate in determining whether the child is Indian and to be heard on the issue of ICWA applicability. *B.H. v. People in Interest of X.H.*, 138 P.3d at 303–04. The Guidelines for State Court: Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,586 (B.1 Commentary), indicate that "the best source of information on whether a particular child is Indian is the tribe itself" and "tribal verification is preferred." Though not binding, the Guidelines are considered persuasive. *B.H. v. People in Interest of X.H.*, 138 P.3d at 302 n. 2; *People*

*in Interest of K.D.,* 155 P.3d 634, 638 (Colo. App.2007).

Notice under the ICWA must also contain enough information to be meaningful. Because the primary purpose of giving notice to the tribe is to enable it to determine whether the child is an Indian child, notice is meaningless if insufficient information is presented to the tribe. *People in Interest of S.R.M.,* 153 P.3d at 441. The notice sent by certified mail must include the Indian child's name, birthdate, and birthplace; the tribal affiliation; a statement of the tribe's right to intervene; all known names, birthdates, places of birth and death, current and former addresses, and other identifying information of lineal relatives; and a copy of the petition. 25 C.F.R. § 23.11(d)(1) (2007); *People in Interest of S.R.M.,* 153 P.3d at 441.

Because protection of the tribal interest is at the core of the ICWA, otherwise sufficiently reliable information cannot be overcome by the statements, actions, or waiver of a parent, or disregarded as untimely. *B.H. v. People in Interest of X.H.,* 138 P.3d at 304.

Section 19–1–126(1)(a) requires continuing inquiries to determine whether the child is an Indian child. *People in Interest of S.R.M.,* 153 P.3d at 442.

### III. Application

■ Here, father's advisement to the court that he was one-quarter Apache and belief that he was entitled to enroll in an Apache tribe was sufficiently reliable to require further inquiry regarding father's tribal heritage and notice to Apache tribal authorities regarding the disposition and termination hearing. *See* 72 Fed.Reg. 13,-648 (Mar. 22, 2007) (listing two Apache tribes in Oklahoma, two in New Mexico, and four in Arizona). Notice to the BIA was required only if the tribe or its location could not be identified. *See B.H. v. People in Interest of X.H.,* 138 P.3d at 303–04; *In re Karla C.,* 113 Cal.App.4th 166, 175 n. 5, 6 Cal.Rptr.3d 205, 209 (2003) (because identity of the tribe was known, notice to the BIA was not required). The Guidelines required that notice of these Colorado proceedings be sent to the BIA office in Albuquerque, New Mexico, not the BIA office in Washington, D.C. 25 C.F.R. § 23.11(c)(6) (2007).

Father's failure timely to return the assessment form did not eliminate the duty of notice and further inquiry under § 19–1–126(1)(a). *See B.H. v. People in Interest of X.H.,* 138 P.3d at 302; *People in Interest of S.R.M.,* 153 P.3d at 442.

The record contains a certificate of compliance, stating that notice of the termination hearing, together with the motion, was sent to the BIA. However, in addition to the fact that notice should have been sent to the tribes, delivery was made only by regular mail, the motion to terminate was not attached, the notice did not acknowledge father's specific identification of the Apache tribe, and it did not contain an advisement of the tribe's right to intervene. *See People in Interest of S.R.M.,* 153 P.3d at 442–43.

Contrary to the trial court's findings that the BIA did not respond, the trial court register of actions shows that the BIA filed a letter on February 12, 2007, indicating that insufficient information had been provided to identify the child's tribal affiliation or to determine eligibility for enrollment with a federally recognized tribe.

Thus, we agree with mother that the notice provided in this case did not sufficiently comply with the ICWA.

The People correctly point out that it is the parents' burden to show that the ICWA applies. *See People in Interest of A.G.-G.,* 899 P.2d 319, 322 (Colo.App.1995); *see also People in Interest of P.A.M.,* 961 P.2d at 589. However, that burden does not excuse the People from complying with the mandatory notice requirements of the ICWA.

### IV. Additional Findings Necessary If the ICWA Applies

Mother correctly asserts that if the ICWA applies, the trial court must find beyond a reasonable doubt that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. *See People in Interest of A.N.W.,* 976 P.2d 365, 370 (Colo.App. 1999); *see also People in Interest of R.L.,* 961 P.2d 606, 608 (Colo.App.1998).

If the court determines on remand that child is an Indian child, it must also find that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have been unsuccessful. *See People in Interest of R.L.*, 961 P.2d at 608.

The judgment is vacated, and the case is remanded with instructions that notice be given in accordance with the provisions of the ICWA and the Children's Code. The trial court's judgment terminating parental rights shall be reinstated and will stand affirmed if it is ultimately determined, after proper notice, that the child is not an Indian child. If the child is determined to be an Indian child, the trial court must proceed in accordance with the ICWA.

Judge CARPARELLI and Judge TERRY concur.